BINNEY et al. v. CUMBERLAND ELY COPPER CO. et al.

(Circuit Court, D. Maine. December 28, 1910.)

No. 660.

1. CORPORATIONS (§ 189*)—SALE OF ASSETS—PROTEST BY STOCKHOLDERS—BILL TO ENJOIN—EQUITY RULE 94.

Where minority stockholders of a corporation protested against the sale of a corporation's property to another company at a meeting of stockholders at which the sale was authorized, such protest constituted a sufficient effort on the part of such nonconsenting stockholders to prevent a sale within the corporation, to enable them to maintain a bill for such relief.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 716; Dec. Dig. § 189.*]

2. CORPORATIONS (§ 182*)—SALE OF ASSETS—AUTHORIZATION—MODE OF PUR-
CHASING CORPORATION.

Where a sale of a corporation's assets has been authorized by the vote
of the purchasing corporation against the protest of all of the stock of
the selling company except its own, the sale may be void as a matter of
law.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 182.*]

3. CORPORATIONS (§ 182*)—SALE OF ASSETS—VALIDITY.

Where a sale of a corporation's assets is authorized by a vote of the
purchasing corporation by which the selling company is controlled, it is
insufficient, to sustain the sale as against the protest of minority stock-
holders, that the price paid was a fair one, but the same proof must be
disclosed which would be essential to support a similar transaction be-
tween a lawyer and his client or a trustee and his cestui que trust.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 182.*]

4. CORPORATIONS (§ 189*) — SALE OF ASSETS — AUTHORIZATION — MINORITY
STOCKHOLDERS—BILL TO VACATE.

Where it was claimed that a sale of a corporation's assets was author-
ized by the vote of the purchasing company by which the selling company
was controlled, a bill by minority objecting stockholders to restrain the
sale, which failed to allege how the majority of the stockholders outside
the purchasing corporation voted on the question, was not sustainable.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 716; Dec.
Dig. § 189.*]

5. MONOPOLIES (§ 24*)—SHERMAN ANTI-TRUST LAW—OPERATION.

A proceeding cannot be sustained to set aside or restrain a sale of a
corporation's assets to another company under the Sherman anti-trust
act, unless it appears that the sale is in furtherance of an intent, and is
alleged with proper details, in violation of the statute.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig.
§ 24.*]

6. CORPORATIONS (§ 189*)—SALE OF ASSETS—MINORITY OF OBJECTING STOCK-
HOLDERS—RIGHTS.

Where a sale of property of a corporation was authorized by a major-
ity of its stockholders, the sale would not always be rescinded at the in-
stance of small minority stockholders objecting thereto, though contrary to
their interests. The only relief to them may be for the court to order a
valuation of their stock under such penalty as would secure that valua-
tion.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 716; Dec.
Dig. § 189.*]

In Equity. Bill by William Binney, Jr., and others, against the Cum-
berland Ely Copper Company and another, to set aside a sale of cer-
tain mining properties of the Ely Company to the Nevada Company.
On demurrer to bill. Sustained, and bill dismissed, with costs, unless
complainants amend within a specified time and simultaneously pay
costs to the time of amendment.

Comstock & Canning, for complainants.

Drummond & Drummond and Symonds, Snow. Cook & Hutchinson,
for respondent Cumberland Ely Copper Co.

N. & H. B. Cleaves and S. C. Perry, for respondent Nevada Consol.
Copper Co.

John N. Steele, for both respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PUTNAM, Circuit Judge (orally). This is a bill brought to rescind the sale by the Ely Company to the Nevada Company of certain mining properties, at which sale there was received therefor in cash $7,-554,084.17. The bill makes no complaint that the price obtained was not a fair one for the time of the sale, or that the property could then have been sold for more money. It makes no complaint of fraud.

The bill was brought by holders of 330 shares out of 1,300,000 shares. Of that stock 1,271,117 shares were owned by the purchasing corporation, that is, the Nevada Company, leaving outstanding elsewhere 28,883 shares, of which the complainants' shares formed a part. The Ely Company owed less than $100,000; so that there was available for distribution to stockholders, and was offered to stockholders as a result of this sale, at somewhat more than par of the stock, which was $5 a share.

The bill was heard on demurrer, and, as the rescinding of the sale in question involves very extensive consequences, it is plain that the court must proceed with great care, and scrutinize the allegations thoroughly, and find them clearly satisfactory and full, before undertaking to disturb the position under pleadings which shut out all possible considerations except those plainly stated on the face of the bill.

It seems that the sale was made by virtue of a vote passed at the meeting of the stockholders of the Ely Company, legally called, and that the complainants were present at that meeting and protested against the sale. The protest was of an indefinite character, sufficient, however, for the present purposes. Possibly under careful scrutiny it might, on a full hearing of the facts, be found too general. The complainants took no further act than to file this protest. It does not even appear that they voted against the motion. They did not ask that any further meeting of their corporation be called, nor make any application to its directors. Therefore the first point made against the bill is that the complainants failed to show compliance with the ninety-fourth rule in equity. It would be nonsense to protest further than the complainants did against the action of a corporation which has itself formally concluded to act; and the directors, of course, could only proceed as ordered by the vote of the stockholders. The ninety-fourth rule only applies when the party seeking relief undertakes to proceed in the interest of the corporation; and it does not apply when he undertakes to proceed against its formal action. That is settled law. Therefore this objection must be passed over.

We have no statement of the way in which the votes stood at the meeting at which this sale was ordered. For aught that appears here a vast majority of the stockholders outside of the purchasing corporation may have favored the sale; so that, if we set the sale aside, as asked for by the complainant, we might do those stockholders more injury than we could possibly do good to these complainants. This is a matter which we know nothing about. It is a strict rule of law, with certain limitations, that, if this sale had been carried by the vote of the purchasing corporation against the protest of all the stock except its own, the sale might be void as a matter of law; but we are proceeding here in equity. If I should rescind absolutely the sale under the

present circumstances, I might do more injustice than justice, and thus be doing the injury which the equity law prohibits. Neither, on the other hand, is it enough to say, either at law or in equity, on behalf of a corporation purchasing at a sale which it controls, merely that the price was a fair one. The same class of facts must be disclosed which would be necessary to support a transaction between a lawyer and his client, or a trustee and his cestui que trust. Nevertheless, the bill in its present form cannot be sustained, in the absence of any showing as to the position for or against the sale of the outstanding stock, aside from that made by the complainants.

The bill also makes some allegations in reference to the Sherman trust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]); but, whatever else may have been said about the Sherman trust act, it has never yet been decided that a proceeding can be sustained which does not clearly set out an intent to create a monopoly, or restrain trade, or detail facts which practically result in one or the other. This bill entirely fails in all those particulars.

We will add, however, that, if the complainants desire to amend the bill, we will give them opportunity to do so; but there would in no event be any equity in wholly rescinding the sale. As we have said, to do this would be an act of practical injustice. We could not rescind, except by appointing a receiver, involving parties in legal expenses far beyond any possible value of the stock held by the complainants. If the bill was put in perfect form, we could only order a valuation of the complainants' stock under such penalty as would secure that valuation. The bill as amended should point out distinctly how the outstanding stock voted at the corporation meeting referred to. It should also anticipate all propositions based on the claim merely that the sale was a fair one and without fraud, and all other propositions which might tend to bring out that the sale was not governed by the same considerations which would govern the confidential relations to which we have referred.

Bill dismissed, with costs, unless the complainants amend, on or before the 15th day of January, 1911, in accordance with opinion passed down December 28, 1910, and simultaneously pays costs to the time of amendment.